UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

DEAN STOLZER,

        Plaintiff,

        v.                                            Case No. 14-C-0315

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration

        Defendant.

---

DECISION AND ORDER REVERSING COMMISSIONER'S DECISION
AND REMANDING FOR REHEARING

Dean Stolzer appeals the denial of his application for Supplemental Security Income disability insurance benefits (DIB). His claim for benefits was denied initially and upon reconsideration. Thereafter, an Administrative Law Judge (ALJ) conducted a hearing on October 10, 2012, at which Stolzer was represented by counsel; Stolzer and a vocational expert (VE) testified. On November 2, 2012, the ALJ denied benefits. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

Stolzer seeks judicial review pursuant to 42 U.S.C. § 405(g), claiming disability beginning November 17, 2004. The parties agree that Stolzer must establish that he was disabled by September 30, 2007 (his "date last insured"), to obtain DIB.

Under § 405(g), "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." This court will overturn the Commissioner's final decision only if it lacks support by substantial evidence, is grounded in legal error, or is too poorly articulated to permit meaningful review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). The court views the record as a whole but does not reweigh the evidence or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ is not required to address every piece of evidence or testimony presented, but must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that examination. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

The Social Security Administration (SSA) has adopted a sequential five-step process for determining whether a claimant is entitled to DIB. 20 C.F.R. §§ 404.1520. Familiarity with the five-step process is presumed. Here, the ALJ concluded Stolzer's case at step four.

## ANALYSIS

A.  Step Two and Step Four/RFC Issues

   1.  Impairments

At step two, the ALJ determines whether the claimant has a severe physical or mental impairment. In this case, the ALJ found that Stolzer had the severe impairments of "status-post hip arthropathy, arthritis, diabetes mellitus, and obesity." (Tr. 16.) The ALJ noted that the medical record included references to depression, but found that

> the claimant does not have a "severe" mental impairment, as he has not had consistent, regular or ongoing care for any mental impairment. He has only mild limitations in terms of daily activity and concentration, persistence and pace. He has no limitation in terms of social functioning and has not experienced episodes of decompensation of extended duration.

2

(*Id.*)

At step four, the ALJ determines the claimant's residual functional capacity ("RFC") and whether the claimant can perform his past relevant work. If he can perform past relevant work then he is not disabled. RFC is the most the claimant can do in a work setting despite his limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p; *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). The ALJ must consider all of the claimant's known, medically determinable impairments (not just the severe impairments) when assessing RFC. § 404.1545(a)(2), (e). Moreover, the ALJ is to consider medical and nonmedical evidence. § 404.1545(e).

In the present case, the ALJ determined that through the date last insured Stolzer had the RFC

> to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except he is limited to only occasional stooping, crouching, kneeling, and crawling; he is unable to climb ramps, stairs, ladders, ropes, and scaffolds; he must avoid exposure to heights and hazards; he must be allowed to alternate between sitting and standing at will; and he will be off task ten percent of the day, in addition to regularly scheduled breaks.

(Tr. 17.) In determining RFC, the ALJ discussed Stolzer's complaints regarding his hip, arthritis, diabetes mellitus, and obesity. (Tr. 17.) Next, the ALJ determined that Stolzer could perform his past relevant work as a shipping clerk. (Tr. 18.)

Missing from the ALJ's decision is a discussion of or even a reference to consideration of Stolzer's back pain, hearing impairment, headaches, knee condition, and hand tremors. On his disability application Stolzer listed back pain as an impairment preventing him from working (in addition to his hip issues, arthritis, diabetes, and depression and several other conditions). (Tr. 136.) Stolzer's medical records from 2004

3

to 2008 include references to back pain, chronic low-back pain, limitations on activities due to severe back pain, and inability to exercise due to back injury and pain. (Tr. 237, 238, 246, 248, 250, 277.) In a function report Stolzer said he could not cook a meal because of back and hip pain and that he could not walk more than twenty feet before experiencing hip and back pain. (Tr. 168.) At the hearing, Stolzer testified that he gets spasms and pain in his back. (Tr. 56.) In describing Stolzer's interview for a mental status examination in December 2007 (only shortly after the date last insured), Dr. Joy Abraham wrote that Stolzer supported himself with a cane, limped, and was stiff when attempting to sit down. (Tr. 277.) Yet the ALJ failed to consider Stolzer's back injury or back pain, though Stolzer's medical records mentioned back pain and hip pain in the same reports.

The ALJ also ignored Stolzer's hearing impairment. Stolzer's disability application mentioned "hearing problems" and the function report completed in 2001 stated that he used and needs a hearing aid for his right ear. (Tr. 136, 171, 172.) Also, a new-patient questionnaire for one of Stolzer's providers shows that Stolzer checked the box for hearing loss. (Tr. 269.) Moreover, Dr. Abraham's mental-health evaluation noted that Stolzer's past history included impaired hearing. (Tr. 277.) Further, Stolzer had surgery on his right ear following a vehicle accident in 2000 and reported that he has had a hearing aid since 2007. (*See* Tr. 172, 240, 312-16, 327.) Medical records show that testing in 2002 revealed a 5.6% hearing impairment in Stolzer's right ear. (Tr. 294.)

Similarly, the record contains references to Stolzer's problems with frequent headaches, trembling in his right hand and "shakiness," as well as a knee reconstruction in 2004. (Tr. 136, 148 (indicating treatment by Dr. Allan Spiegel for "[t]rempling [sic] in right arm & hand"), 250 (use of a brace for knee in 2006), 253 (doctor's report from June 2004

4

discussing PCL reconstruction and advising Stolzer that "he is never going to have a perfect knee"), 269 (new-patient form with check for frequent headaches), 277 (Dr. Abraham's medical history review referencing "recurrent headaches" and "a progressive trembling of the right hand").) At the hearing, Stolzer mentioned his hand tremors and the ALJ questioned him about them, though the testimony did not focus on particulars of the tremors during the 2004 to 2007 time frame. (Tr. 56-57.)

But the ALJ failed to acknowledge any of these additional conditions at step two to determine whether they are severe or at step four to determine RFC. Whether these conditions constitute severe impairments at step two remains to be seen. But if they are not severe impairments, *all* impairments and conditions, should have been considered in determining RFC. § 404.1545(a)(2), (e); *Stage v. Colvin*, No. 15-1837, ___ F.3d ___, 2016 WL 492333, *4 (7th Cir. Feb. 9, 2016) (stating that the ALJ must evaluate all limitations that arise from medically determinable impairments, "even those that are not severe, and may not dismiss a line of evidence contrary to the ruling" (internal quotation marks omitted)). These impairments could have an effect on Stolzer's ability to perform job duties. For example, back pain and knee pain may impact his ability to sit for the required time for full-time, sedentary work. Ongoing headaches could interfere with his ability to concentrate or attend work. Hand tremors could affect fine manipulation that may be important for certain sedentary job tasks. Hearing loss could affect ability to work. The failure to consider these conditions requires remand for further consideration, including a new hearing at which the ALJ should question Stolzer about these conditions.

Also, regarding RFC the ALJ failed to discuss the effects of Stolzer's medications on his ability to work. At least twelve medications were listed on Stolzer's application. (Tr.

5

139.) Eight were listed in a disability report. (Tr. 181.) Medical records from 2005 and 2006 list numerous medications. (Tr. 222, 234.) On his function report Stolzer wrote that the medication makes him drowsy. (Tr. 167, 174.) Moreover, Dr. George Schneider reported in an RFC opinion that Stolzer's medications cause fatigue. (Tr. 410.)

Further, though the ALJ found Stolzer's diabetes to be a severe impairment, he did not consider in the RFC determination the effects of conditions likely related to the diabetes such as cellulitis (*see* Tr. 254) and swollen legs or ankles (*see* Tr. 233-34, 237, 250) on Stolzer's ability to sit at a sedentary job for a full day. Additionally, the ALJ failed to discuss for RFC purposes Stolzer's depression, yet determined it was not severe. Even if depression was found not to be severe, it had to be considered in determining RFC.

The Commissioner argues that the ALJ did not have to discuss every piece of evidence and that Stolzer fails to establish that any missing evidence showed he had greater limitations than the ALJ found. Further, the Commissioner maintains that any error by the ALJ was harmless because the RFC finding was supported by the opinions of state agency reviewing physicians. But on this record the court cannot tell that the ALJ considered, let alone rejected, several impairments at step two. The ALJ was not free to dismiss alleged impairments without explaining why he found evidence inconsequential; meaningful review requires the ALJ to articulate reasons for rejecting an entire line of evidence. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The court disagrees with the Commissioner's contention that the missing discussion fails to suggest additional impairments or limitations. The ALJ's multiple errors regarding Stolzer's impairments call for a full reconsideration of all impairments and rehearing to obtain further testimony. Thus, remand is required. And because the court cannot tell whether at step four the ALJ

6

considered, let alone rejected, the limitations caused by all of Stolzer's impairments, the ALJ must reconsider step four, too.

   2.   Credibility and Daily Activities

In his decision, the ALJ used the troublesome boilerplate criticized by the Seventh Circuit in *Bjornson v.* Astrue, 671 F.3d 640, 644 (7th Cir. 2012), and subsequent opinions, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 18.) As discussed by the Seventh Circuit, this language suggests that the ALJ determined RFC first, before determining credibility, which is backward. *Bjornson*, 671 F.3d at 645.

Use of this language is not reversible error so long as the ALJ points to information in the record that justifies his determination, indicating that he assessed credibility correctly notwithstanding the boilerplate language. *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). Here, the ALJ pointed to treatment records documenting significant improvement in Stolzer's hip, "including only occasional and mild hip pain and the remaining ability to sit for more than an hour continuously." (Tr. 18.) He then referenced Stolzer's ability "to perform a wide range of daily activities, including maintaining his personal hygiene, using a riding lawn mower, driving a motor vehicle, visiting family, and attending church" along with evidence indicating that Stolzer's activities and medications had not changed for several years. (Tr. 18.) The ALJ concluded that "[c]onsidering the claimant's level of

7

physical ability and his reported level of daily activity, the undersigned finds that the claimant's allegations of disabling functional limitations are not fully credible during the time period at issue in this case." (Tr. 18.)

The Commissioner argues that the inclusion of the boilerplate credibility language was harmless in light of the multiple reasons the ALJ cited to justify his assessment. (Doc. 23 at 11.) But review of the record indicates that the ALJ's credibility determination was not supported by substantial evidence. The ALJ failed to assess how maintaining hygiene, driving a lawn mower or vehicle, visiting family, or attending church correspond with working eight hours a day five days a week. Church may be a passive activity that takes just a couple hours a week. And unless Stolzer drives long distances, cuts a massive lawn or had extended, physically demanding visits with family, those activities likely do not translate into an ability to work a full-time job. Struggling through daily activities of life does not mean that a person can manage the requirements of the workplace for a full work week. *Stark v. Colvin*, No. 15-2352, ___ F.3d ___, 2016 WL 698255, *3 (7th Cir. Feb. 22, 2016). For instance, "a person performing chores has flexibility in scheduling, can receive help, and is not held to a minimum standard of performance, unlike an employee." *Id.*

Additionally, the ALJ failed to discuss Stolzer's credibility about breaks in his activities. Stolzer wrote in his function report that he lies down several times during the day. He awakens, eats and takes his medications, walks the dog (using his electric scooter), and runs errands. Then, in Stolzer's words, "I lay around till lunch. Then I take a nap. When I get up I go on the computer for awhile and pay bills or go on Facebook, or play games. After that I go and lay in bed for awhile and wait for supper. After supper I

8

lay down again." (Tr. 166.)  Stolzer indicated that in total he spent sixteen to eighteen hours in bed each day.  (Tr. 174.)

Inability to get through the day without lying down several times suggests the inability to work even a sedentary job.  *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). "One does sedentary work sitting . . . but not lying down."  *Bjornson*, 671 F.3d at 646.  The VE at Stolzer's hearing stated that if a hypothetical worker left the workstation for five or ten minutes, the two sedentary jobs he discussed would not be available.  (Tr. 53.)  The ALJ did not indicate he considered, and thus did not sufficiently reject, Stolzer's testimony regarding his need to lie down.

Further, the ALJ failed to fully consider Stolzer's complaints of pain stemming from the physical impairments that he did not consider.  The ALJ noted improvement in pain and only mild pain associated with Stolzer's hip.  But he ignored back pain.  Stolzer indicated in his function report that walking fifteen to twenty feet caused back pain, that he experienced pain ninety percent of the day, and that he cannot complete tasks because of back pain.  (Tr. 171, 173, 174.)  Medical records document his complaints of back pain through 2007 and beyond.  (Tr. 248, 250, 277.)  Moreover, it appears undisputed that Stolzer uses an electric cart for mobility, supporting his complaints of pain in standing or walking.  (*See* Tr. 248.) Dr. Schneider indicated in an RFC opinion that Stolzer's pain was often sufficiently severe enough to interfere with attention and concentration.  (Tr. 409-10.)

In evaluating credibility, the ALJ must comply with SSR 96-7p.  *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).  SSR 96-7p requires consideration of, in addition to medical evidence, (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors

9

that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual has received for the relief of pain or other symptoms; (6) measures, other than treatment, that the individual uses to relieve the pain or other symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms. Here, the ALJ failed to discuss adequately the frequency or intensity of Stolzer's symptoms; what precipitates and aggravates them; what Stolzer does to relieve pain (such as lying down); and the type, dosage, effectiveness, and side effects of his medications. Although the ALJ mentioned SSR 96-7p (Tr. 17), he did so only in conclusory fashion stating that the evidence had been considered in light of the requirements of the ruling. Hence, the ALJ did not build a logical bridge between the evidence and his conclusion. Consequently, this case must be remanded for a more complete credibility determination, including exploration and consideration of Stolzer's need to lie down throughout the day and pain related to his other possible impairments.

    3.    Other Limitations

The RFC did not address limitations such as lifting, pushing, or pulling. Although the ALJ addressed sitting or standing at will, he did not address the length of time in a day that Stolzer could sit. At the hearing, Stolzer testified that he could not sit for "[a]ny length of time" and could sit for twenty to thirty minutes (Tr. 43, 46), and a doctor's report indicates a complaint or history of irritability sitting in a chair for less than an hour. But it is unclear from the ALJ's opinion (and thus the ALJ has provided no logical bridge about the matter) the total time Stolzer can sit during a day rather than at one time. Generally, sedentary

10

work requires about six hours of sitting per day. *See* SSR 96-9p. Can Stolzer sit for six hours total per day even with the sit/stand option? The answer to this question will be very telling with regard to Stolzer's ability to perform sedentary work. Further, the ALJ did not address whether Stolzer's use of a cane or electric scooter instead of walking impacted Stolzer's RFC.

The Commissioner contends that substantial evidence supports the ALJ's finding that Stolzer had the RFC for a reduced range of sedentary work, he failed to consider the particulars of that reduced range. Therefore, on remand, the ALJ should discuss any and all of Stolzer's limitations.

4. Treating Physician Statements

The ALJ found the opinions of two nonexamining agency medical consultants "generally reasonable," though he found that Stolzer was more limited than those doctors had concluded. (Tr. 18.) However, the ALJ did not mention the comment from treating physician Dr. David Leffers in January 2006 that Stolzer was "permanently disabled from work." (Tr. 250.) Nor did the ALJ note the statement from treating physician Dr. Kenneth Gustke in January 2007 that "there is no change in [Stolzer's] worker compensation restrictions including no repetitive lifting, pushing, or pulling of more than 20 pounds. No prolonged standing or walking, avoiding climbing or squatting. These restrictions remain permanent." (Tr. 249.) Nor did the ALJ acknowledge a medical questionnaire dated April 25, 2011, by Dr. Schneider regarding Stolzer's impairments, how those impairments affected attention and concentration, and the effect of medication. (Tr. 409-12.)

Nevertheless, the Commissioner contends that the ALJ's failure to address these physician statements was harmless error, as it appears that the ALJ would reinstate his

11

decision on remand.  According to the Commissioner, Dr. Gustke's opinion supports the ALJ's finding because Stolzer's past job as a shipping clerk involved eight hours of sitting; no walking or standing; and no climbing, stooping, kneeling, crouching, crawling, lifting or carrying.  However, Dr. Leffers's statement appears to be a restatement of Stolzer's report of his history rather than a reasoned medical opinion, as well as an opinion on an issue reserved to the Commissioner.  And Dr. Schneider's opinion that Stolzer's pain would interfere with attention and concentration is consistent with the RFC finding because the ALJ found that Stolzer would be off task ten percent of the day.  Further, Dr. Schneider's opinion post-dated the date last insured.  In other words, according to the Commissioner, all of these opinions are either consistent with the RFC finding or irrelevant and a remand for discussion of the opinions would be a waste of time.

Read in context, it is unclear whether Dr. Leffers's statement was his own assessment of Stolzer's condition or was based on Stolzer's report at the time.  Dr. Schneider's opinion from 2011 may not reflect Stolzer's condition in 2011.  But the ALJ's decision does not indicate any rejection of these opinions—it does not indicate any consideration of them at all.  And the ALJ cannot consider and discuss only evidence that favors his decision.

The court does not subscribe to the Commissioner's view that consideration of these opinions would be a waste of time.  The ALJ's finding that Stolzer could be off task ten percent of the time does not equate with a finding about concentration.  At the hearing, the ALJ suggested that ten percent was considered for the "time, sitting or standing, when you're not doing what you're at the job to do," i.e., that it accounted for the time spent changing between sitting and standing.  (Tr. 53-54.)  Dr. Schneider's opinion regarding

12

Stolzer's concentration and the effects of medications, though issued years after the date last insured, may be relevant if Stolzer's condition and medication did not change after 2007 (a matter that the ALJ can explore on remand), as some evidence suggests. (*See* Tr. 18 (noting that Stolzer's medications had not changed much between 2000 and 2007).)

Regarding Dr. Gustke's statement, the RFC is in accord regarding inability to climb, but Dr. Gustke said no squatting, while the RFC indicates occasional crouching and stooping are possible, and the ALJ did not address any limitations regarding lifting, pushing or pulling of more than twenty pounds. Because this case already is being remanded for consideration of additional impairments and their effects, Gustke's statement may have some impact in the ALJ's reconsideration of RFC.

Generally, a treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *accord* SSR 96-2p; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). An "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470. An ALJ's finding that a treating physician's opinion is not entitled to controlling weight "does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p

On remand, the ALJ should consider and discuss these physician's statements and the weight given them.

### 5. VE Testimony/Hypothetical Facts

The ALJ posed questions to the VE based on a hypothetical individual of Stolzer's age, education, and work experience who was limited to sedentary work and allowed "a sit/stand option, changing positions from sitting to standing every 20 minutes"; who cannot climb ladders, ropes, scaffolds, ramps, or stairs; who is limited to occasional stooping, crouching, kneeling, and crawling; who must avoid exposure to heights and hazards; and who is "off task 10 percent of the day in addition to regularly scheduled breaks." (Tr. 52-53.) The ALJ asked the VE if such an individual could perform either of the two sedentary jobs Stolzer had performed previously. The ALJ's RFC reflects the same limitations as the hypothetical.

No substantial evidence supports the ALJ's finding with regard to being off task ten percent of the day. As indicated above, at the hearing the ALJ suggested that ten percent accounted for the time spent changing between sitting and standing. But the decision includes no explanation for how the ALJ arrived at ten percent. And based on the VE's testimony, that quantity is important. The VE stated that Stolzer's prior jobs were available only if the amount of time off task was ten percent or less. (Tr. 55.) When asked about the impact of a change in the hypothetical to being off task more than ten percent ("for any reason or any combination of reasons"), the VE replied that the change "would eliminate those jobs and other jobs." (Tr. 55.) The VE opined that no employer would tolerate off-task time of more than ten percent for a person with the other hypothetical limitations. (*Id.*)

The lack of substantiation in the record for the ALJ's finding of ten percent off-task time requires reversal of the ALJ's decision. Stolzer contends that the ALJ's finding of ten percent off-task time should result in an award of benefits in his favor because it indicates

14

he cannot work a full day or work week. However, the court believes that the ALJ's finding was flawed and that the various flaws in the ALJ's RFC determination are more appropriately the basis for rehearing rather than an award in Stolzer's favor.

6.   Availability of Past Work

The ALJ found that Stolzer could perform his past job as a shipping clerk as he performed it previously. However, it is unclear from the ALJ's decision what the physical requirements of Stolzer's past job were and how they matched the RFC determination. *See Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984) (stating that the ALJ should list the specific physical requirements of the previous job and the claimant's ability to perform those tasks).

The Commissioner contends that the ALJ's findings were sufficient because he cited Exhibit 3E, a work history report from Stolzer indicating that the shipping clerk job required no walking, standing, climbing, kneeling, crouching, crawling, grasping big objects, or reaching, while involving eight hours of sitting and eight hours of handling small objects. (Tr. 158.) The ALJ also mentioned Stolzer's testimony that the job required no lifting. (Tr. 19, 50.)

However, the ALJ cited Exhibit 3E only regarding Stolzer's report that the work was sedentary, not as a reference for all of the physical requirements of the job. (Tr. 19.) Hence, the ALJ's conclusory discussion of Stolzer's prior work is insufficient under *Strittmatter*. On remand, he should discuss in more detail the requirements of Stolzer's prior work.

15

B.  Developing the Record/Evaluating all Listings at Step Three

Stolzer contends that the record is missing certain medical documentation predating 2004 concerning conditions that persisted during the time period at issue. The parties dispute who bore the burden of ensuring that the record was complete. Although the SSA may have ordered the records, the ALJ referenced the documents he was admitting as exhibits at the hearing and Stolzer's attorney did not respond that any were missing. (Tr. 34-35.) Section 404.1545(a)(3) states that Stolzer is responsible for providing the evidence used to make a finding about RFC *and* that the SSA is responsible for developing the complete medical history, including "making every reasonable effort to help you get medical reports from your own medical sources." Section 404.1512(d) and subsection (d)(2) of the regulations state that the SSA will develop a complete medical history for at least either the twelve months prior to the filing of the application for benefits (which appears to be November 2010, taking the record period back to late 2009) or the twelve months prior to the date last insured (taking the record period back to November 2006).

Who was at fault for not completing the record is not material for present purposes because the case is being remanded for further consideration. Upon remand, the ALJ should allow Stolzer to supplement the record with any additional medical documentation he believes appropriate and the SSA should assist in obtaining any additional medical documentation that appears pertinent.

Likewise, this court need not address whether the ALJ properly considered all pertinent "listings." At step three the ALJ determines whether the claimant's impairments meet or equal one of the impairments listed in the Administration's regulations, 20 C.F.R.

16

pt. 404, subpt. P, app. 1 (the "listings"), as being so severe as to preclude substantial gainful activity. At the hearing Stolzer's attorney raised only section 1.03 of the listings. (Tr. 37.) The ALJ discussed 1.02 and 1.03 and then said that "[t]he remaining impairments were evaluated under Appendix 1, generally, and no section was met or equaled." (Tr. 17.) Now, Stolzer argues that the ALJ had to consider and discuss additional listings 1.04 (disorders of the spine), 2.10 (hearing loss), and 9.00 (diabetes).

The appropriate listings for consideration at step three may change after the ALJ's reconsideration of step two on remand. Therefore, the court will not address any challenges to the step-three analysis. On remand the ALJ should consider any listings that may be implicated or that Stolzer or his counsel argue.

## CONCLUSION

For the above-stated reasons,

IT IS ORDERED that the ALJ's decision is reversed and this case is remanded under sentence four of § 405(g).

Dated at Milwaukee, Wisconsin, this 8th day of March, 2016.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

17